UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DAVID LOPEZ and JEROME CASCIO, individually and on behalf of all others similarly situated, | Case No. 1:23-cv-01263 |
| Plaintiffs, | |
| v. | |
| T-MOBILE US, INC. and T-MOBILE USA, INC., | |
| Defendants. | |

## NOTICE OF REMOVAL

PLEASE TAKE NOTICE that, pursuant to 28 U.S.C. §§ 1332(d), 1441(a), 1446, and 1453, Defendants T-Mobile US, Inc. and T-Mobile USA, Inc. (collectively, "T-Mobile") hereby remove the above-captioned action, *David Lopez et al. v. T-Mobile US, Inc. and T-Mobile USA, Inc.*, Case No. 2023CH00729 (the "State Court Action"), from the Circuit Court of Cook County, Illinois, County Department, Chancery Division, to the United States District Court for the Northern District of Illinois, Eastern Division. T-Mobile hereby provides "a short and plain statement of the grounds for removal" pursuant to 28 U.S.C. § 1446(a) and *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 87 (2014).

This Court has original jurisdiction over this action under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d) ("CAFA"). In relevant part, CAFA grants district courts original jurisdiction over civil class actions filed under federal or state law in which any member of a class of plaintiffs is a citizen of a state different from any defendant, where the putative class includes more than 100 members, and where the amount in controversy for the putative class members in

the aggregate exceeds the sum or value of $5 million, exclusive of interest and costs. As set forth below, this case meets all of CAFA's requirements for original jurisdiction and removal and is timely and properly removed by the filing of this Notice.

## VENUE

1. The State Court Action was filed in Cook County, Illinois. Therefore, venue properly lies in the United States District Court for the Northern District of Illinois, Eastern Division. *See* 28 U.S.C. §§ 93(a)(1), 1391.

## PLEADINGS, PROCESS, AND ORDERS

2. On or about January 24, 2023, Plaintiffs David Lopez and Jerome Cascio ("Plaintiffs") filed the State Court Action, on behalf of themselves and all others they claim to be similarly situated. In accordance with 28 U.S.C. § 1446(a), a true and correct copy of the Summons and Complaint filed in the State Court Action and served on T-Mobile is attached as **Exhibit A** to this Notice. A true and correct copy of the docket in the State Court Action is attached as **Exhibit B** to this Notice. Copies of all other filings in the State Court Action, including the Summons and Complaint, are attached as **Exhibit C** to this Notice.

3. According to the allegations in the Complaint, Plaintiffs and the members of the putative class they purport to represent are persons whose information was allegedly "compromised, unlawfully accessed, and stolen" during the incident announced by T-Mobile on January 19, 2023. *See* Compl. ¶¶ 18-19.

4. The Complaint alleges eight counts for: (1) negligence, (2) breach of confidence, (3) invasion of privacy by public disclosure of private facts and intrusion upon seclusion, (4) breach of contract, (5) breach of implied contract, (6) unjust enrichment, (7) declaratory

judgment/injunctive relief, and (8) violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq*. *See generally* Compl.

## SERVICE ON THE STATE COURT

5. Pursuant to 28 U.S.C. § 1446(d), promptly after filing this Notice of Removal in the United States District Court for the Northern District of Illinois, written notice of such filing will be given by the undersigned to Plaintiffs' counsel of record, and a copy of this Notice of Removal will be filed with the Clerk of the Circuit Court of Cook County, Illinois. A copy of the Notice of Filing of Notice of Removal and Additional Appearance that T-Mobile will file in state court is attached hereto as **Exhibit D**.

## TIMELINESS OF REMOVAL

6. T-Mobile USA, Inc. was served with a copy of the Summons and Complaint on January 31, 2023. *See* **Exhibit A**. T-Mobile US, Inc. accepted service on February 28, 2023. This Notice has been filed within thirty (30) days after T-Mobile was served and is therefore timely under 28 U.S.C. § 1446(b).

## ORIGINAL JURISDICTION PURSUANT TO CAFA

7. This Court has jurisdiction over this case under CAFA, 28 U.S.C. § 1332(d), and this case may be removed pursuant to the provisions of 28 U.S.C. § 1441(a). As set forth more fully below, this is a civil putative class action wherein: (1) the proposed classes contain at least 100 members in the aggregate; (2) there is minimal diversity; (3) no defendant is a state, state official, or other governmental entity; (4) the total amount in controversy for all class members, based on the allegations of the Complaint, exceeds $5 million, exclusive of interest and costs; and (5) none of the exceptions to CAFA jurisdiction applies. CAFA authorizes removal of such actions

in accordance with 28 U.S.C. § 1446. As discussed below, this case meets each CAFA requirement for removal.

### *The Proposed Class Contains at Least 100 Members in the Aggregate*

8. Under CAFA, a "class action" is "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action[.]" 28 U.S.C. § 1332(d)(1)(B). Plaintiffs allege that they bring their claims on behalf of a putative nationwide class as well as a putative Illinois sub-class, citing 735 ILCS 5/2-801 for support. *See* Compl. ¶¶ 53, 55. This meets CAFA's definition of a putative class action. *See* 28 U.S.C. § 1332(d)(1)(B).

9. Plaintiffs also allege that the T-Mobile data security incident "involv[ed] approximately 37,000,000 of [T-Mobile's] customers," that "millions of consumers have had their personal data breached due to T-Mobile's actions and inactions[,]" and that "the Class is so numerous that joinder of all individual plaintiffs would be impracticable." *See* Compl. ¶¶ 18, 21, 57.

10. Based on Plaintiffs' allegations in the Complaint, CAFA's 100-person requirement is satisfied. T-Mobile has also reviewed its records and determined that there are more than 100 individuals whose information was involved in the cyberattack that gives rise to Plaintiffs' claims.

### *Minimal Diversity Exists*

11. CAFA's diversity requirement is satisfied when at least one plaintiff is a citizen of a state different from any defendant. 28 U.S.C. §§ 1332(d)(2)(A), 1453.

12. Plaintiffs allege that they are both citizens of the state of Illinois. Compl. ¶¶ 12, 13.

13. Both T-Mobile defendants are incorporated in Delaware and have their principal place of business in Washington. *See* Compl. ¶ 14. Thus, T-Mobile is a citizen of Delaware and

Washington. *See Hertz Corp. v. Friend*, 559 U.S. 77, 93 (2010); *see also* 28 U.S.C. § 1332(c)(1) (for diversity purposes, a corporation "shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business . . .").

14. CAFA's minimal-diversity requirement is met here because at least one member of the putative class is a citizen of Illinois (Plaintiffs), and T-Mobile is a citizen of Delaware and Washington.[1]

### *No Defendant is a Governmental Entity*

15. T-Mobile is not a state, state official, or other governmental entity.

### *The Amount in Controversy Exceeds $5,000,000, Exclusive of Interest and Costs*

16. The "matter in controversy" exceeds $5 million, exclusive of interest and costs. *See* 28 U.S.C. § 1332(d)(2). "The question is not what damages the plaintiff will recover, but what amount is 'in controversy' between the parties." *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 448 (7th Cir. 2005). "That the plaintiff may fail in its proof, and the judgment be less than the threshold (indeed, a good chance that the plaintiff will fail and the judgment will be zero) does not prevent removal." *Id.*

17. The Complaint does not state an amount in controversy, so this notice must contain only "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee*, 574 U.S. at 89. "[T]he defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court." *Id.* at 87; *see also Roppo v. Travelers Com. Ins. Co.*, 869 F.3d 568, 578-79 (7th Cir. 2017).

---

[1] As the Complaint notes, T-Mobile has a second headquarters in Overland Park, Kansas. Compl. ¶ 14. Even if Overland Park, Kansas was deemed T-Mobile's principal place of business, this conclusion would still hold.

18. T-Mobile denies all liability on Plaintiffs' claims, denies that Plaintiffs could ever recover damages, and denies that a court could ever certify a class under Federal Rule of Civil Procedure 23. But accepting Plaintiffs' allegations are true—for removal purposes only—their putative class claims put more than $5 million, exclusive of interest and costs, in controversy. Plaintiffs allege that the data security incident involved "approximately 37,000,000 of [T-Mobile's] customers[,]" based on a public securities filing made by T-Mobile on January 19, 2023. Compl. ¶ 18 (citing T-Mobile US, Inc., Current Report (Form 8-K) (Jan. 19, 2023)). Assuming for purposes of this removal that there are 37 million putative class members—a plausible number given Plaintiffs' allegations—then so long as Plaintiffs are seeking to recover more than $0.14 in damages per putative class member, the amount in controversy exceeds $5 million.

19. The Complaint makes it clear that Plaintiffs seek far more than $0.14 per putative class member. Plaintiffs seek a wide variety of damages, including "economic damages and other actual harm for which they are entitled to compensation[.]" Compl. ¶ 48. Plaintiffs generally point to a variety of alleged "harms," including: "[u]nauthorized charges on their debit and credit cards[,]" "out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects" of the incident, and the diminished value of their information—to name a few. *Id.* Plaintiffs further seek compensation for the "[c]osts for credit monitoring services." *Id.* Plaintiffs request numerous equitable and injunctive relief measures, such as requiring T-Mobile to retain "third-party security auditors/penetration testers, as well as internal security personnel, to conduct testing that includes simulated attacks, penetration tests, and audits on [T-Mobile's] systems on a periodic basis," "[e]ngaging third-party security auditors and internal personnel to run automated security monitoring[,]" and "[r]outinely and continually conducting internal

6

training and education to inform internal security personnel[.]" *Id.* ¶ 141 (enumerating declaratory and injunctive relief measures sought).

20. To take one example, Plaintiffs allege that T-Mobile should compensate putative class members for the costs associated with paying for credit monitoring services. Compl. ¶ 48. Even assuming that Plaintiffs are seeking such services for only a year, then so long as those services cost only $0.14 *per year*, then the amount in controversy would exceed $5 million just for this one category of relief Plaintiffs seek. This easily satisfies the amount in controversy requirement. Indeed, the monthly advertised rates for credit-monitoring services are much higher. For the major national credit-monitoring bureaus, these costs range between $9.95 and $19.95 per month (Equifax) and $29.95 per month (TransUnion). *See* Equifax, https://www.equifax.com/personal/ (last visited Feb. 20, 2023); TransUnion, https://tinyurl.com/yx8z27y3 (last visited Feb. 20, 2023). As a result, Plaintiffs' claim for credit monitoring services alone puts more than $5 million, exclusive of interest and costs, at stake.[2]

21. Numerous courts have considered the cost of identity theft protection and credit monitoring in evaluating CAFA jurisdiction in data breach cases. *See, e.g.*, *Porras v. Sprouts Farmers Mkt., LLC*, No. EDCV 16-1005 JGB (KKx), 2016 WL 4051265, at *3 (C.D. Cal. July 25, 2016) (including cost of providing credit-monitoring services in evaluating amount in controversy and assuming cost of $15.95 per month per putative class member); *Fielder v. Penn Station Inc.*, No. 1:12-cv-2166, 2013 WL 1869618, at *2 (N.D. Ohio May 3, 2013) (finding CAFA amount in

---

[2] 37 million (putative class members) multiplied by $0.14 equals $5,180,000 million dollars. That amount would of course increase if it were assumed that the identity theft protective services cost more than $0.14 per year or if Plaintiffs seek this relief for more than a year. In *Porras*, for example, a district court used a monthly rate of $15.95. *Porras v. Sprouts Farmers Mkt., LLC*, No. EDCV 16-1005 JGB (KKx), 2016 WL 4051265, at *3 (C.D. Cal. July 25, 2016).

controversy requirement satisfied in light of class size and cost of credit monitoring services); *McLoughlin v. People's United Bank, Inc.*, 586 F. Supp. 2d 70, 73 (D. Conn. 2008) (same).

22. While CAFA's amount in controversy threshold is easily satisfied based on the damages sought for credit monitoring services alone, the Complaint requests other forms of relief that also must be considered in the amount in controversy and that further demonstrate that CAFA's jurisdictional threshold is satisfied, including:

- **Compensatory damages**. Plaintiffs allege that they have experienced "economic damages and other actual harm for which they are entitled to compensation, including but not limited to" the alleged theft of their information, unauthorized charges on payment cards, alleged injuries flowing from potential identity theft, out-of-pocket expenses associated with mitigating the alleged "effects of the Data Breach," diminution in the value of personal information, and loss of privacy, to name a few. Compl. ¶ 48. These requests for relief also increase the amount in controversy beyond the threshold. *See Ibrahim v. Old Kent Bank*, No. 99 C 999, 1999 U.S. Dist. LEXIS 6195, at *7, *10 (N.D. Ill. Apr. 7, 1999) (finding amount in controversy requirement satisfied in light of compensatory and other types of damages and forms of relief sought).

- **Punitive damages.** The Complaint also seeks an award of punitive damages, Compl. at 37, which further increases the amount in controversy. *See Stull v. YTB Int'l, Inc.*, No. 10-cv-600-GPM, 2010 U.S. Dist. LEXIS 108876, at *11 (S.D. Ill. Oct. 13, 2020) ("Plaintiffs in this case seek both actual and punitive damages. . . . '[E]ach must be considered to the extent claimed in determining the jurisdictional amount.'" (quoting *Sharp Elecs. Corp. v. Copy Plus, Inc.*, 939 F.2d 513, 515 (7th Cir. 1991))).

- **Declaratory and injunctive relief.**  Under Seventh Circuit precedent, the amount in controversy includes "what compliance with an injunction would cost the defendant" and is further evidence that CAFA's jurisdictional threshold is satisfied.  *Roppo*, 869 F.3d at 580.

### *The Exceptions to CAFA Do Not Apply*

23. None of the exceptions to CAFA jurisdiction applies here.  *See* 28 U.S.C. §§ 1332(d)(3-4).  In any event, the burden to prove the applicability of an exception to jurisdiction under CAFA rests with the party opposing removal.  *Breuer v. Jim's Concrete of Brevard, Inc.*, 538 U.S. 691, 698 (2003) (finding that once a defendant establishes removal is proper, "the burden is on a plaintiff to find an express exception").  Accordingly, it is not T-Mobile's burden to demonstrate that any exception to CAFA does not apply.

### **CONCLUSION**

24. In conclusion, removal is appropriate under CAFA because (1) the proposed class contains at least 100 members; (2) at least one member of the proposed class is a citizen of a state different than T-Mobile; (3) the aggregate amount in controversy exceeds $5 million exclusive of interest and costs; and (4) the procedural requirements for removal under 28 U.S.C. §§ 1446 and 1453 have been met.

25. Accordingly, federal subject matter jurisdiction over this action exists pursuant to 28 U.S.C. § 1332(d).

26. T-Mobile reserves the right to amend this Notice of Removal.

WHEREFORE, T-Mobile removes the Action from the Circuit Court of Cook County, Illinois, County Department, Chancery Division, to this Court.

Dated: March 1, 2023

Respectfully submitted,

/s/ *Lawrence H. Heftman*
Lawrence Harris Heftman
Mallory M. McMahon
**ArentFox Schiff LLP**
233 South Wacker Drive
Suite 7100
Chicago, IL 60606
Tel: (312) 258-5500
Fax: (312) 258-5600
lawrence.heftman@afslaw.com
mallory.mcmahon@afslaw.com

Terance A. Gonsalves
Illinois Bar No. 6272295
**ALSTON & BIRD LLP**
1201 West Peachtree Street
Atlanta, GA 30309
Tel: (404) 881-7983
terance.gonsalves@alston.com

*Counsel for Defendants T-Mobile US, Inc. and T-Mobile USA, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on March 1, 2023, I electronically filed the foregoing on the CM/ECF system, which thereby served such filing via the Court's ECF Notification system to all attorneys of record in this matter, and served each of the attorneys identified below, via e-mail, a copy of the foregoing document:

Bryan Paul Thompson
Robert W. Harrer
Chicago Consumer Law Center, P.C.
33 N. Dearborn St., Suite 400
Chicago, IL 60602
Tel: 312-858-3239
Bryan.thompson@cclc-law.com
Rob.harrer@cclc-law.com

/s/ *Mallory M. McMahon*
Mallory M. McMahon
An Attorney for Defendants T-Mobile US, Inc. and T-Mobile USA, Inc.